UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| RON WASHINGTON, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 3:19-cv-00097 |
| RIVERVIEW HOTEL, INC., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Cross-motions for summary judgment filed by pro se Plaintiff Ron Washington (Doc. No. 100) and Defendant Riverview Hotel, Inc. d/b/a Riverview Inn (Riverview Inn). (Doc. No. 99) are now before the Court. Because the proof and arguments offered by the parties overlap significantly, the Court considers the motions together. For the reasons that follow, Washington's motion will be denied and Riverview's motion will be granted.

**I.   Background**

The relevant facts in this action are straightforward. Ron Washington is the pastor of Restoration House of Praise. The Riverview Inn is a hotel in Clarksville, Tennessee, that rents event space to several local churches, among its other clients. In September 2017, Riverview agreed to rent Washington space to hold Restoration House of Praise services. Riverview entered into a contract with Washington to rent its second-floor conference room on Sunday mornings. The contract was for a trial period and expired on December 31, 2017. Washington sought to renew the contract for 2018 and Riverview declined. Washington negotiated the contract with Jaymee Vickery, who handled sales of event space for Riverview. Vickery is a white woman. Washington is a Black man.

From the perspective of Riverview's employees, Washington's use of the hotel space did not go well. The employees found Washington pushy, argumentative, and difficult to deal with. Washington was often slow to pay his weekly rent and tried to negotiate only partial payments. Despite being told he only had access to the space on Sundays, he arrived on Saturdays to set up for services, once interrupting a private event.

In December 2017, Vickery contacted her co-workers Ruby Magana and Qaina Watson regarding 2018 contracts for the four churches then renting Riverview's space: Crossroads, Clarksville Church of God in Christ, Grace Bible, and Restoration House of Praise. Vickery questioned whether Washington's contract should be renewed, stating "I'm 100% fine either way, but I'm not the one who has to deal with [Washington] every Sunday." Watson responded that Washington "is definitely hard to deal with and quite demanding to say the least" and that her biggest concern "is the push back he always gives when it comes to submitting his payments (he either doesn't want to pay prior to accessing the room or makes an attempt toward a partial payment)." Magana stated that, although she thought Washington was "settling into his routine," they might have a long-term issue with noise because "the rooms directly across [from Washington's rented space] are accessible rooms and . . . most people that come for the weekend will not want to be roused by his sermon in the morning."

Vickery, Magana, and Watson agreed not to renew Washington's contract. Vickery asked her colleagues for "some advice on how to proceed with letting him know we will not longer be doing business with him." Magana proposed the following email:

> It has been our sincere pleasure to do business with you and [y]our organization, Restoration House of Praise. All of our staff loves your passion for your cause as well as your delightful guests.
>
> Unfortunately, the accommodations on our 2nd floor are going through a renovation to allow for more [a]ccessible sleeping rooms. We have a duty to our

guests to provide as quiet and restful a stay as possible. The traffic and volume of having the Gateway Room rented early on a Sunday morning may interfere with these accommodations. At this time, we do not have a space that will accommodate both your budget and capacity constraints and will be unable to go forward with a contract for 2018.

We thank you for your business and wish you all the best with the creation of a new facility!

On December 17, 2021, Vickery sent Washington a variation of Magana's draft email, stating a different reason for terminating the contract. Vickery's email read:

It has been our sincere pleasure to do business with you and your organization, Restoration House of Praise. All of our staff loves your passion for your cause as well as your delightful guests.

Unfortunately, the accommodations on our 2nd floor are going through a renovation to allow for Budweiser to expand.[1] At this time, we do not have a space that will accommodate both your budget and capacity constraints and will be unable to go forward with a contract for 2018.

We thank you for your business and wish you all the best with the creation of a new facility!

No one disputes that this was not true. The second floor was not being renovated and meeting space was still available to be rented, a fact that Washington learned when he had his wife, Cheryl Washington, contact Vickery about renting space for regular meetings of a fictional women's group. Cheryl Washington identified herself as "Lisa" in the call, which Washington recorded. Vickery told "Lisa" that she could rent space for the women's group to use on Sundays starting in January 2018.

About an hour after this telephone call, Washington went to the Riverview Inn to speak with Vickery in person and asked again if Riverview had any space available for him to rent in 2018. Vickery said that there was not space available because of the renovations and because she

---

[1] Budweiser's human resources department shared building space with the Riverview Inn.

had rented the only uncommitted space to the women's group for a six-month contract in November 2017, before she knew renovations would be taking place. Again, this was not true.

According to Vickery, Washington came around her desk and yelled at her during this conversation. Because of this conduct, Riverview's attorney sent Washington a letter on January 2, 2018, demanding that he cease and desist all contact with Riverview's employees and not come to the property for any reason. Riverview states that it continued to lease space to the three other churches after not renewing Washington's lease, including the predominantly African-American Clarksville Church of God in Christ, to which it has leased space for approximately two decades.

Washington initially filed suit in the Circuit Court for Montgomery County, Tennessee, claiming that he had been denied use of space in a place of public accommodation on account of his gender/sex, race, and religion. Riverview removed the action to this Court. Washington states in his motion for summary judgment that he is pursuing discrimination claims under 42 U.S.C. § 2000a, Title II of the Civil Rights Act of 1964; 42 U.S.C. § 1981; Tennessee Code § 4-21-501; and 42 U.S.C. § 2000e, Section 706 of the Civil Rights Act of 1964, as well as a claim of common-law negligence. Washington seeks "only . . . a total of $250,000 for punitive damages."

**II.  Legal Standard**

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." Id. at 324 (citation omitted); see also Blizzard v. Marion Tech. Coll., 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Barrett v. Whirlpool Corp., 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. Anderson, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. Id.

This Court's Local Rule 56.01 provides that "any motion for summary judgment . . . must be accompanied by a separate, concise statement of the material facts as to which the moving party

contends there is no genuine issue for trial." M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). Under this rule, "[e]ach fact must be set forth in a separate, numbered paragraph [and] . . . must be supported by specific citation to the record." Id. Any party opposing a motion for summary judgment must specifically respond to each asserted fact by: "(1) Agreeing that the fact is undisputed; (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record." M.D. Tenn. R. 56.01(c) (response to statement of facts). Furthermore, "[t]he response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant" and "must be filed with the papers in opposition to the motion for summary judgment." Id. Pro se parties are not excused from complying with these rules. See M.D. Tenn. R. 56.01(b)–(c).

**III.    Analysis**

    **A.    Claim Under 42 U.S.C. § 1981**

The heart of Washington's action is his claim under 42 U.S.C. § 1981, which "prohibits racial discrimination in the making and enforcement of private contracts." Runyon v. McCrary, 427 U.S. 160, 168 (1976). Because Washington relies on circumstantial evidence of discrimination, the Court applies the McDonnell Douglas–Burdine burden-shifting analysis. Johnson v. Univ. of Cincinnati, 215 F.3d 561, 572 (6th Cir. 2000) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981)). Under this test, Washington must establish a prima facie case of discrimination by showing that:

    (1) [he] is a member of a protected class;

> (2) [he] made himself available to receive and pay for services ordinarily provided by the defendant to all members of the public in the manner in which they are ordinarily provided; and
>
> (3) [he] did not enjoy the privileges and benefits of the contracted for experience under factual circumstances which rationally support an inference of unlawful discrimination in that
>
>> (a) [he] was deprived of services while similarly situated persons outside the protected class were not deprived of those services, and/or
>>
>> (b) [he] received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable.

Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 871 (6th Cir. 2001).

If Washington establishes a prima facie case, "a mandatory presumption of discrimination is created and the burden shirts to the defendant to 'articulate some legitimate, nondiscriminatory reason for the . . . rejection.'" Johnson, 215 F. 3d at 573 (quoting McDonnell Douglas, 411 U.S. at 802)). If Riverview meets that burden of production, Washington must then prove "that the proffered reason was actually a pretext to hide unlawful discrimination." Id. "'A reason cannot be proved to be "a pretext for discrimination" unless it is shown both that the reason was false, and that discrimination was the real reason.'" Id. (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)).

There is no dispute as to the first two elements of the prima facie case: Washington is a Black man and he attempted to renew his contract to rent space from Riverview in the manner that Riverview ordinarily provides that service to the public. Riverview argues that there is no genuine issue of material fact as to the third element because Washington has not offered any proof that he is similarly situated to others who were able to rent space from Riverview or that Riverview denied

7

him services in a markedly hostile manner so as to create an inference of discrimination. Christian, 252 F.3d at 871.

Washington responds that he has met the third element of the prima facie case because he has shown—and Riverview does not dispute—that Vickery offered rental space to Cheryl Washington's fictional women's group after refusing to renew Washington's contract. There are two ways in which this proof offered by Washington fails to show disparate treatment. First, the record does not reflect Cheryl Washington's race and, therefore, does not establish that she is not a member of the same protected class as Washington. However, there is evidence in the record to support the conclusion that Riverview would have rented the space to persons of other races. In fact, Vickery testified in her deposition that she would have offered space "to anybody that was not [Washington] . . . It doesn't matter if they were women, male, female, black, white . . . it didn't matter . . . As long as it wasn't [Washington]." (P. 211.)

Second, Cheryl Washington presented herself as "Lisa," a person with whom Vickery had no prior relationship and, thus, no history of professional interactions. Evidence of comparators, like that offered by Washington to show discrimination, must be similar in "all of the *relevant* aspects." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (emphasis original). This includes having "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the [defendant's] treatment of them for it." O'Donnell v. City of Cleveland, 838 F.3d 718, 727 (6th Cir. 2016). Washington does not argue that Riverview would have rented space to someone whom Riverview's employees found similarly disagreeable or someone who had not paid his contract on time. Instead, Washington argues that the employee declarations Riverview cites in support of the allegations of his conduct are inadmissible as evidence. But Federal Rule of Civil Procedure 56 establishes that

8

a party asserting a fact as disputed or undisputed may support that fact by reference to "depositions, documents . . . [and] affidavits or declarations . . . or other materials." Fed. R. Civ. P. 56(c)(1)(A). Further, the deposition transcripts Washington cites in support of his own motion for summary judgment provide ample support for Riverview's position that he was a difficult client.[2]

Thus, there is sparse evidence in the record from which the Court could find a genuine issue of fact that the circumstances of Washington's contract not being renewed support an inference of unlawful discrimination so as to meet the third element of the prima facie case. However, even if the Court found that Washington had met this burden, he would not prevail at summary judgment. This is because Washington has offered no evidence that discrimination on the basis of race—or any other legally protected category—motivated Riverview's conduct in any way.

There is no question that Riverview gave Washington two false reasons why it would not renew his lease—first, that it could not rent the entire second floor because of planned renovations, and second, that it had rented the only remaining available meeting space to a women's group. In the context of the litigation, Riverview has consistently admitted that those reasons were false and proffered that Riverview did not renew Washington's contract because he was a difficult customer, did not pay his bill on time, and generated complaints from other guests. Riverview has thus met its burden of production to articulate a legitimate nondiscriminatory reason for not renewing Washington's contract. Johnson, 215 F. 3d at 573. The question then becomes whether Washington

---

[2] In response to Washington's deposition question as to why Vickery did not rent to him, she answered: "Because you were rude, unruly, didn't pay a bill. You were – and you tried to intimidate people, you talked over people, you're condescending and you're difficult to deal with . . . It was not a good business decision to continue conducting business with you." PID 1583.

9
Case 3:19-cv-00097 Document 144 Filed 03/26/21 Page 9 of 13 PageID #: 2414

has offered sufficient proof to create a genuine issue of material fact "that the proffered reason was actually a pretext to hide unlawful discrimination." Id.

He has not. Washington's principal argument, advanced throughout the litigation, is that he has met that burden because Riverview does not dispute that the initial reasons it gave Washington for not renewing his contract were false. But establishing pretext is only half the battle. Washington must offer proof sufficient to create a question of fact that "the proffered reason was not the true reason for the employment decision . . . and that race was." St. Mary's Honor Ctr., 509 U.S. at 508 (quoting Burdine, 450 U.S. at 256).

"There may be cases in which the multiple grounds offered by the defendant for the adverse action of which the plaintiff complaints are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plaintiff could withstand summary judgment." Smith v. Chrysler Corp., 155 F. 3d 799, 809 (6th Cir. 1998) (quoting Russell v. Acme–Evans Co., 51 F.3d 64, 70 (7th Cir. 1995)); see also Cicero v. Borg-Warner Auto., Inc., 280 F. 3d 579, 592 (6th Cir. 2002) (holding that, "[w]hen the justification for an adverse . . . action changes during litigation, that inconsistency raises an issue whether the proffered reason truly motivated the defendants' decision"). In the context of this litigation, Riverview has never argued that the reasons it gave Washington at the time were the actual reasons for not renewing his contract and has consistently asserted, in great detail, that its history of customer interactions with Washington was the motivating factor. Being deposed by Washington, Vickery testified that she did not want to renew his contract because "you are combative, you are aggressive, you are overbearing, you are difficult, you are unruly, and the list goes on. It is not . . . because you are a black man. It is . . . not because of your religion, and it is – it is none of those reasons." (Doc. No. 101-1, PageID# 1554.) Vickery continued, "I admitted that I lied to you because of how you – how you respond in

your – reaction, but behind closed doors the only reason was because you were difficult and you didn't pay."[3] (Id., PageID# 1564.) Further, Riverview points out that it continues to lease space to the predominantly African-American Clarksville Church of God in Christ, which has held services at the hotel for nearly twenty years without the negative interactions Riverview experienced with Washington. (Doc. No. 115, PageID# 2223.)

Washington has offered no contrary evidence from which the trier of fact could find that Riverview's reason for not renewing his contract was race—or sex, or religion—and not the history of their business relationship. Indeed, Washington points to nothing in the record from which to infer that race played a part in the decision at all. "It is not enough . . to *dis*believe the [defendant]; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." St. Mary's Honor Ctr., 509 U.S. at 591. In the absence of such evidence, there is no genuine issue of material fact that Riverview discriminated against Washington on the basis of his race and in violation of § 1981.

### B. Claim Under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a

Title II of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000a, provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). Places of public accommodation covered by the statute include "any inn, hotel, motel, or other

---

[3] Washington argues that he was not difficult and points out that Riverview never called the police on him during any of their interactions. However, just as "an employee's perception of his own performance cannot establish a genuine issue of material fact as to whether the employee was meeting his employer's legitimate expectations," neither can Washington's assessment of his own behavior create an issue of fact in this context. Wood v. Town of Warsaw, N.C., 914 F. Supp. 2d 735, 744 (E.D.N.C. 2012) (citing King v. Rumsfeld, 328 F. 3d 145, 149 (4th Cir. 2003)).

establishment which provides lodging to transient guests." Id. § 2000a(b)(1). Title II provides only for injunctive relief, not for monetary damages. 42 U.S.C. § 2000a-3(a); Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402 (1968) ("When a plaintiff brings an action under [Title II], he cannot recover damages."). Because Washington seeks only punitive damages, he has not stated a claim for which relief may be granted under Title II, and the Court will not consider that cause of action further.

### C. Claim Under the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-501

Washington asserts a claim under the Tennessee Human Rights Act, Tennessee Code § 4-21-501, which provides that "it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of a place of public accommodation, resort or amusement, as defined in this chapter, on the grounds of race, creed, color, religion, sex, age or national origin." Tenn. Code Ann. § 4-21-501. Just as Washington has offered no evidence to show that Riverview's decision not to renew his contract was motivated by race, neither has he pointed to any evidence to show that it was motivated by his religion or his sex. Riverview continues to lease space to three other churches for their worship services. And, although Riverview offered to rent space to Cheryl Washington for her women's group meetings, there is nothing in the record to indicate that it denied space to Washington because he is a man. Further, punitive damages—the only relief Washington seeks in this action—are not available under the THRA. Ayala v. Summit Constructors, Inc., 788 F. Supp. 2d 703, 723 (M.D. Tenn. 2011).

### D. Claim of Common-Law Negligence

A claim of common-law negligence under Tennessee law requires a plaintiff to establish (1) a duty owed by the defendant to the plaintiff, (2) a breach of the duty by the defendant, and (3) harm suffered by the plaintiff caused by the defendant's breach. Faber v. Ciox Health, LLC, 331

12
Case 3:19-cv-00097   Document 144   Filed 03/26/21   Page 12 of 13 PageID #: 2417

F. Supp. 3d 767, 777 (W.D. Tenn. 2018). Washington articulates his common-law negligence claim against Riverview as based on the allegation that it "intentionally, willfully, knowingly, deliberately, consciously, egregiously, maliciously, [and] recklessly violated" Sections 1981 and 1982 of the Civil Rights Act of 1866, Title II of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981-2000a, Title X of the Civil Rights Act of 1964, the 13th and 14th Amendments, and "O.R.C. § 4112-02g." As Riverview points out, Washington has offered no authority to show that Tennessee courts have found a common-law duty from a place of public accommodation to its customers created by any of these statutes. In the absence of such a duty, Riverview is entitled to judgment as a matter of law on Washington's negligence claim.

**IV.     Conclusion**

For these reasons, Riverview's motion for summary judgment (Doc. No. 99) will be granted. Washington's motion for summary judgment (Doc. No. 100) will be denied.

An appropriate order will enter.

                                                                    _____
                                                                    WAVERLY D. CRENSHAW, JR.
                                                                    Chief United States District Judge